ORDERED.

**Dated:  May 04, 2016**

K. Rodney May
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re

Thomas Allen Chesley,                               Case No. 8:11-bk-13785-KRM
                                                                     Chapter 7
     Debtor,

_____/

Susan K. Woodard,

     Plaintiff,

v.                                                              Adv. No. 8:14-ap-00644-KRM

Thomas Allen Chesley and
Harry Hammons,

     Defendants.

_____/

**MEMORANDUM OPINION REGARDING
PROPERTY OF THE BANKRUPTCY ESTATE
(2002 INDIAN MOTORCYCLE)**

INTRODUCTION

Is a motorcycle property of the bankruptcy estate,[1] if it was acquired by the debtor shortly

before the bankruptcy filing, but was not titled in the debtor's name until eight months after the

_____

[1] 11 U.S.C. § 541(a).  Unless otherwise stated, statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101
*et seq.*

petition date, on application to the state attesting that he had acquired the Motorcycle pre-petition?  The Chapter 7 trustee, Susan K. Woodard (the "Trustee"), contends that it is, in this adversary proceeding filed against Mr. Chesley ("Debtor") and his father, Harry Hammons ("Hammons").  The Trustee seeks (1) a declaratory judgment that a 2002 Indian Scout motorcycle (the "Motorcycle")[2] is property of the bankruptcy estate and (2) an order requiring Debtor to turn it over to her.

Debtor and Hammons, appearing *pro se*, seek summary judgment based on the undisputed fact that title to the Motorcycle was not registered in Debtor's name on the petition date.[3]  They argue that, as a matter of Florida law, only the registered title holder can be the owner, citing Fla. Stat. § 319.22(1).[4]  They contend that if Debtor was not the registered title holder on the petition date, the Motorcycle did not become property of the bankruptcy estate and, therefore, the Court lacks jurisdiction to adjudicate the issue of ownership.[5]  Defendants also argue that Hammons is the "valid owner" of the Motorcycle, in accordance with an understanding between them.[6]

The Court concludes that it does have jurisdiction to adjudicate the issue of ownership of the Motorcycle.  In exercising its jurisdiction, the Court is guided by Eleventh Circuit precedent, which instructs that registered title is not the sole determinant of ownership, and by Florida appellate decisions which recognize the distinction between beneficial ownership and marketable title of a motor vehicle.  Based on undisputed facts, including Debtor's post-petition application

---

[2]  VIN # 5CDMTB5162G005163.

[3]  Doc. No. 80 at 8.

[4]  *Id.* at 8, 10.

[5]  Doc. No. 102 at ¶¶ 9-13.

[6]  Doc. No. 80 at 7-8.

for title stating that he purchased the Motorcycle before the petition date, the Court concludes

that the Motorcycle became property of the bankruptcy estate.[7]  Accordingly, the Trustee's

motion for summary judgment will be granted and the defendants' motion for summary

judgment will be denied.  The Debtor must turn over the Motorcycle to the Trustee.

## BACKGROUND FACTS

Debtor filed a voluntary petition for relief under Chapter 13, nearly five years ago, on

July 21, 2011 (the "Petition Date").  He was unable to confirm a Chapter 13 plan and the case

was converted to Chapter 7, on November 21, 2013.[8]

In 2010, the Florida Department of Highway Safety and Motor Vehicles (the "Florida

DMV") issued a title certificate for the Motorcycle (the "2010 Title Certificate") to the prior

---

[7] The record includes the following:

- Copy of check in the amount of $5,000 made payable to Harry Hammons (Doc. No. 1-1).

- Copy of Certificate of Title with Thomas Allen Chesley as the Registered Owner (Doc. No. 70-2).

- Certified Copy of Motor Vehicle Inquiry Report – 2002 Indian Motorcycle (Doc. No. 70-1 at 1).

- Certified Copy of Application for Vehicle/Vessel Certificate of Title – 2002 Indian Motorcycle (Doc. No. 70-1 at 2).

- Certified Copy of Certificate of Title referencing Transfer of Title by Seller – 2002 Indian Motorcycle (Doc. No. 70-1 at 4).

- Certified Copy of Separate Odometer Disclosure Statement – 2002 Indian Motorcycle (Doc. No. 70-1 at 8).

- Certified Copy of Application for Vehicle/Vessel Certificate of Title -2002 Indian Motorcycle (Doc. No. 70-1 at 10).

- Certified Copy of Certificate of Title – Commonwealth of Virginia (Doc. No. 70-1 at 12).

- Certified Copy of Vehicle Identification Number and Odometer Verification – 2002 Indian Motorcycle (Doc. No. 70-1 at 16).

- Copy of Power of Attorney for a Motor Vehicle, Mobile Home or Vessel (Doc. No. 80 at 12).

[8] Order Converting Case to Chapter 7 and Setting Hearing on Disbursement of Funds Held by Chapter 13 Trustee. Main Case, Doc. No. 482.  The Debtor filed five plans in the Chapter 13 case, none of which were confirmed.  Main Case, Doc. Nos. 13, 68, 131, 132, and 305.

owners, "Scott Melanson or Susan Chabot."[9]  It is not disputed that on June 26, 2011, less than a month before filing his Chapter 13 petition, Debtor delivered $1,500 cash to Melanson, who endorsed the 2010 Title Certificate as seller.  Debtor claims that the $1,500 came from his father, who "mailed" that amount in cash to Debtor.[10]  Melanson then delivered that document and the Motorcycle to Debtor.[11]

About eight months after the petition date, Debtor submitted the endorsed 2010 Title Certificate, with an application for title, to the Florida DMV.[12]  Debtor's title application bears his signature as the "Applicant/Owner."[13]  The date acquired is stated to be "06/26/2011;" the odometer reading is stated to be "6,142 miles 06/27/2011 [sic] actual."[14]  The endorsed 2010 Title Certificate submitted with the title application also bears Debtor's signature and names him as the purchaser, with the date of sale stated as June 26, 2011.

---

[9]  The Trustee proffered a certified copy of a Florida DMV title report, including a certified copy of the 2010 Title Certificate.  Doc. No. 70-1 at 4.  Federal Rule of Evidence 902(2) provides that domestic public documents that are signed and certified by an officer or employee of a state, department, or agency, shall be self-authenticating evidence.  Extrinsic evidence of authenticity is not required.  Here, the certified copies obtained from the Florida DMV constitute self-authenticating evidence of the title history for the Motorcycle.  After a hearing on March 3, 2015, the Court ruled that these certified copies were admissible.  Doc. No. 77.

[10]  The Court finds this explanation to be unbelievable.  Apart from the obvious – who sends that much cash through the mail? – Debtor had at least $32,000 in his bank account on the petition date.  *See, e.g.,* Debtor's amended Schedule B, Doc. Nos. 306, 620.  But, the source of payment, Debtor or Hammons, is not material to the decision of the Court.

[11]  *See, e.g., Motor Credit Corp. v. Woolverton*, 99 So. 2d 286, 290 (Fla. 1957); *In re Coburn*, 250 B.R. 401, 403 (Bankr. M.D. Fla. 1999) ("The owner of a motor vehicle can transfer his or her interest in the car by simply endorsing the back of the car's certificate of title.")

[12]  Doc. No. 70-1 at 2-5.

[13]  *Id.* at 2.

[14]  The date on this form differs by one day from that stated in the other documents and appears to be a transcription error.  The parties do not dispute that the transaction with Melanson occurred on June 26, 2011.  The endorsed 2010 Title Certificate states that as of June 26, 2011, the odometer reading was 6,142 miles.  The certified copy of the odometer disclosure statement submitted with Debtor's title application in March 2012 bears Melanson's signature and states the reading as 6,142 miles, and the "date read" as "6/27/2011" [sic].  Doc. No. 70-1 at 8.

The Florida DMV issued a title certificate on March 28, 2012, naming Debtor as the sole "registered owner."[15]  The 2012 Title Certificate shows no other person as having an interest in the Motorcycle.

Defendants assert that Debtor was acting as an agent for his father, Hammons, when he acquired the Motorcycle on June 26, 2011.  Their version of events is set forth in their motion for summary judgment:

> "On June 23, 2011, Harry Hammons mailed a power of attorney and $1,500 cash to Debtor Thomas Chesley to go inspect, test, evaluate and if decided, for Thomas Chesley to purchase the Indian motorcycle for Harry Hammons."

> "Hammons was a resident of Hickman, Tennessee."

> "On June 26, 2011, Thomas Chesley did purchase the Indian motorcycle for Harry Hammons."

> "The printed line on the title was not filled in."

> "[Debtor] brought the Motorcycle back and did some repairs on the Indian for his father . . . ."

> "After the repairs were completed within a week or so Harry Hammons picked the bike up and took it to Hickman, TN until Harry [sic] called his son and said this bike is too low and too heavy for me, I'm going to sell it.  That was sometime in the beginning of March after the winter months in Hickman, TN."[16]

Debtor maintains that after his father found the Motorcycle unsuitable, their arrangement changed.  Even though, according to defendants, Hammons wanted to sell the Motorcycle, Debtor decided to keep it as "cheap transportation."[17]  Defendants claim that Debtor took title so

---

[15]  Doc. No. 70-2.

[16]  Doc. No. 80 at ¶¶ 23-24, 27-30.

[17]  *Id.* at ¶ 32.

that he could obtain insurance for it, but that Debtor had "no authority to sell or otherwise transfer it."[18]

There is no written document which corroborates the defendants' arrangements and understandings. They proffered only a copy of the "power of attorney," which bears Hammons' printed name as "owner" and "grantor."[19] The printed form states:

> "I hereby name and appoint, *Thomas Chesley*, to be my lawful attorney-in-fact, to act for me, in applying for an original or duplicate certificate of title, to register, transfer title, or record a lien to the motor vehicle, mobile home or vessel described below, and to print my name and sign their name, in my behalf. My attorney-in-fact can also do all things necessary to the application or any other related instrument and to bind me in as sufficient a manner as I myself could do, were I personally present and signing the same."[20]

This form describes the Motorcycle and bears the date of June 23, 2011, three days before the Motorcycle was acquired from Melanson. The form is not signed by Hammons. It is not notarized.[21]

In support of his position that he was not the owner of the Motorcycle on the Petition Date, Debtor asserts that the line for "purchaser" was left blank when Melanson signed the 2010 Title Certificate on June 26, 2011.[22] Debtor also claims that he inserted his name later, in March 2012, when he applied for the title.[23] Debtor claims that the odometer disclosure form submitted with his title application was not executed until March 27, 2012, when "he met up with"

---

[18] Doc. No. 80 at ¶¶ 32-35. *See also* Debtor's Amended Statement of Financial Affairs, filed on May 5, 2012, shortly after becoming the registered title holder (Case No. 8:11-bk-13785, Doc. No. 131 at 26).

[19] *Id.* at 12. This is a Florida DMV form, typically executed and delivered by a customer who trades in a vehicle. This power of attorney would allow a dealer to convey title of the vehicle to a third party.

[20] *Id.* (emphasis in original).

[21] *Id.*

[22] *Id.* at ¶ 28.

[23] *Id.* at ¶¶ 37-39.

Melanson to obtain his signature on that form.[24]  Thus, Debtor has argued, in the alternative, that

the sale did not really occur until March 28, 2012 when the title was issued to him.[25]

DISCUSSION

1.    <u>Jurisdiction.</u>

This court has jurisdiction over all property of the estate pursuant to 28 U.S.C. § 1334.

And, it has jurisdiction to adjudicate disputes as to whether any particular asset is included in

the bankruptcy estate.[26]  Adjudication of such disputes is a "core proceeding" under 28 U.S.C.

§ 157(b)(2)(A) and (E), in which the Court may enter a final order.  This memorandum opinion

constitutes the Court's findings of fact and conclusions of law, in accordance with Fed. R. Bankr.

P. 7052.

2.    <u>Summary Judgment Standard.</u>

Summary judgment is appropriate "if the movant shows that no genuine issue of material

fact exists, and that it is entitled to judgment as a matter of law."[27]  "The moving party bears the

initial burden of demonstrating that no genuine issue of material fact exists.  If the moving party

meets this initial burden, then the other party must demonstrate the existence of a genuine issue

of material fact."[28]

---

[24]  Doc. No. 80 at ¶¶ 37- 38.

[25]  *Id.* at ¶ 39.

[26]  "Under [28 U.S.C. § 1334 (e)], the Bankruptcy Court has exclusive jurisdiction over property of the bankruptcy estate, and over disputes regarding whether specific property is property of the estate.  *In re Cox,* 433 B.R. 911, 920 (Bankr. N.D. Ga. 2010). 'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'  *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984) (quoted in *In re Ryan,* 2008 WL 1969593, at 2 (11th Cir.))."  *In re Marathe,* 459 B.R. 850, 854 (Bankr. M.D. Fla. 2011).

[27]  Fed. R. Civ. P. 56(a) is made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056.

[28]  *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir.1993).

In addition to the authority to grant summary judgment, the Court may draw inferences, make findings of fact, and make determinations of witness credibility.[29]  Furthermore, "[i]t is permissible for a trial court in a non-jury case to grant summary judgment if witness credibility is not at issue and trial would not enhance the court's ability to draw inferences and conclusions."[30]

3.    Property of the Bankruptcy Estate.

If the Motorcycle is property of the bankruptcy estate, it must be turned over to the Trustee.[31]  Property of the bankruptcy estate is broadly defined in § 541(a) as "all legal or equitable interests of the debtor in property as of the commencement of the case," which is the petition date.[32]  The determination of what constitutes property of the estate is a question of federal law, even though the "the nature and existence of a debtor's right to property is determined by looking at state law."[33]

---

[29] *In re French*, 2012 WL 1166248, *4-5 (M.D. Fla. Apr. 9, 2012); *Nunez v. Superior Oil Co*., 572 F.2d 1119, 1124 (5ᵗʰ Cir. 1978).

[30] *Id.* at *4.  As the Fifth Circuit explained in *Nunez v. Superior Oil Company* (which is precedent in the Eleventh Circuit under *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981):

> "If a decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though the decision may depend upon inferences to be drawn from what has been incontrovertibly proved.  Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in [drawing a conclusion] even if that conclusion is deemed 'factual' or involves a 'mixed question of fact and law.'  A trial on the merits would reveal no additional data . . . .  The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial."

572 F. 2d at 1124.

[31] 11 U.S.C. § 542(a).  *See In re Allegheny Label, Inc.*, 128 B.R. 947, 954 (Bankr. W.D.Pa. 1991).

[32] 11 U.S.C. § 541(a)(1).

[33] *In re Kalter*, 292 F.3d 1350, 1353 (11th Cir. 2002) (citing *Lewis v. Charles R. Hall Motors, Inc. (In re Lewis*), 137 F. 3d 1280, 1283 (11th Cir. 1998) (quoting *Southtrust Bank of Ala. v. Thomas (In re Thomas)*, 883 F.2d 995 (11th Cir. 1989)).

Under § 348(a) of the Bankruptcy Code, conversion of a case from one chapter to another does not change the original petition date.[34]  Under § 348(f), when a case is converted from Chapter 13 to Chapter 7, property of the estate in the Chapter 7 case consists of property of the estate on the petition date –  here, July 21, 2011 – that remains in the possession, or is under the control, of Debtor on the date of the conversion – here, November 21, 2013.

Defendants' Motion for Summary Judgment

Debtor and Hammons seek summary judgment based on the proposition that Fla. Stat. § 319.22(1) controls the issue of ownership.

Section 319.22(1) provides, in pertinent part, that:

"(1) Except as provided in §§ 319.21 and 319.28, a person acquiring a motor vehicle … from the owner thereof . . . shall not acquire marketable title to the motor vehicle . . . until he or she has had issued to him or her a certificate of title to the motor vehicle . . . .   Except as otherwise provided herein, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle . . . sold, disposed of, mortgaged, or encumbered, unless evidenced by a certificate of title duly issued to that person, in accordance with the provisions of this chapter."[35]

They argue that the Motorcycle cannot, as a matter of law, be deemed to be property of the estate because no title certificate had been issued to Debtor by the petition date.  Debtor further contends that Fla. Stat. § 319.22(1) also bars this Court from declaring otherwise.[36]

But, Fla. Stat. § 319.22(1) is not the sole determinant of ownership, as Debtor claims.  By its terms, the statute is subject to two statutory exceptions, including one for transfers by operation of law, in Fla. Stat § 319.28, which include transfers by  "inheritance, devise or bequest, *order in bankruptcy*, insolvency, replevin, attachment, execution, or other judicial sale .

---

[34]  11 U.S.C. § 348(a).

[35]  Fla. Stat. § 319.22(1) (2015).

[36]  Doc. No. 80 at 10.

. . or repossession is had upon default . . . of a security agreement."[37]  The commencement of a

bankruptcy case, by the filing of a voluntary petition, constitutes an "order for relief" by the

bankruptcy court.[38]  This is the legal event that causes the transfer to the bankruptcy estate of all

legal and equitable interests of a debtor.  Thus, the statute on which defendants rely cannot bar

the Trustee's claim.

In 2002, the Eleventh Circuit interpreted this statutory exception to Fla. Stat. § 319.22(1)

in a case involving the ownership of a motor vehicle that had been repossessed by a secured

creditor shortly before the registered title holder filed for bankruptcy.[39]  In ruling that the secured

creditor became the owner of the vehicle immediately upon repossession, the court reasoned:

> "The Florida statute generally provides that a certificate of title is required
> in order to obtain marketable title to sell a vehicle.  *See* Fla. Stat. § 319.22.  If the
> vehicle at issue has been repossessed or otherwise transferred by operation of law,
> however, the statute provides an exception, allowing the party possessing the
> vehicle to obtain a certificate of title from the [Florida DMV].  *See* Fla. Stat. §
> 319.28(1)(a)."

> * * *

> ". . . Florida courts have acknowledged that *no* certificate is necessary for
> ownership; as a result, the fact that the Creditors did not obtain any certificates
> prior to the bankruptcy filings is immaterial.  Indeed, several Florida courts have
> held that the certificate of title is merely evidence of ownership that may be
> refuted by other evidence."[40]

Recently, in *Geico Gen. Ins. Co. v. Gould,*[41] the Eleventh Circuit revisited Fla. Stat. §

319.22(1), in a case involving Geico's refusal to pay the property damage claim of the operator

---

[37]  Fla. Stat. § 319.28(1)(a) (2015) (emphasis added).

[38]  11 U.S.C. § 301.

[39]  *In re Kalter*, 292 F.3d at 1353.

[40]  *Id.* at 1357-58 (citations omitted) (emphasis in original).

[41]  595 F. App'x 901 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 2895 (2015).

of a motorcycle (Gould) because he was not the record title holder.  The court restated the

guiding principle to be applied regarding motor vehicle ownership disputes in Florida:

> "a certificate of title is merely evidence of, and is not a requirement of,
> establishing ownership . . . a certificate of title gives the presumption
> of ownership, a presumption that may be rebutted by other competent
> evidence."[42]

The court reversed the summary judgment that had been entered for the insurer, because it was

based on the erroneous statutory interpretation, which Debtor and Hammons insist on here, that

failure to comply with Fla. Stat. § 319.22(1) is an absolute bar to a judicial determination of

ownership by a person not named on the registered title.[43]

Likewise, Florida appellate decisions recognize the legal distinction between beneficial

ownership and marketable title.  In 1952, the Florida Supreme Court decided that a prospective

buyer, who had taken a car for a test drive, kept it overnight and verbally agreed to purchase it

before being involved in an accident, never became the owner of the car because he had signed

no papers and had paid nothing.[44]  The court ruled that no sale had occurred and the car was still

owned by the dealership, which held the title.  The Court was careful to state the following:

> "It should be noted that our conclusion of this matter is based on the
> common-law rules respecting sales, and not on the theory, advanced by
> the appellee, that the provisions of the Florida Motor Vehicle Law, Chapter
> 319, Florida Statutes, . . .  have abrogated such rules and that a
> noncompliance with such statute renders an attempted sale void.  There is
> nothing in Chapter 319 to show that the Legislature intended that the
> provisions thereof respecting the endorsement and transfer of certificates

---

[42] *Geico,* 595 F. App'x at 905 (citations omitted).

[43]  The district court had granted the insurer's motion for summary judgment, relying on § 319.22 to hold that the operator could not, in the absence of record title, be the owner of the motorcycle and therefore entitled to a property settlement from the insurer.  The Eleventh Circuit concluded that "the district court placed too much emphasis on the registered title of ownership" and should have considered other factors including who retained beneficial ownership and use of the motorcycle and whether there was a transfer of ownership even if not registered with the state.  *Geico,* 595 F. App'x at 905.

[44] *Ragg v. Hurd,* 60 So.2d 673, 674 (Fla. 1952).

of title or registration upon sale of a motor vehicle provide an exclusive method of transferring title to motor vehicles, and we do not think the Legislature so intended."[45]

In *State Farm Mutual Automobile Ins. Co. v. Hartzog*,[46] Ms. Hartzog agreed to buy a truck, took delivery, and made payments to the seller, who was still the registered title holder when Ms. Hartzog was later involved in an accident.  The appellate court ruled that she was the beneficial owner of the truck and, therefore, not entitled to make claims under the seller's insurance policy.[47]  The court reasoned that:

> "Beneficial ownership is determined by the overt acts of the buyer and seller at the time of the agreement and thereafter.  The name on the title is not the litmus test for determining who owns a vehicle for insurance purposes.  In the present case, neither the fact that Welch's name remained on the title nor Hartzog's opinion that the truck was not hers is the key factor for determining beneficial ownership.  The facts relating to the transfer of the vehicle reveal that Hartzog was the beneficial owner."

> "The trial court focused on Hartzog's testimony that she considered the car to be "becoming" hers, but not yet fully hers.  However, whether a sale was actually consummated is a question of law to be determined by the facts in evidence.  Hartzog's opinion as to the status of her ownership is a mere legal conclusion with no probative effect."[48]

In *In re Forfeiture of Cadillac Escalade, Identification No. 3GYEK63N02G222802*,[49] Mr. Hoffman's vehicle was seized for a forfeiture sale after he was arrested.  The seller (Polanco) had been paid $32,000 and had delivered the executed title documents to Hoffman,

---

[45] *Hurd,* 60 So. 2d at 674.

[46] 917 So. 2d 363 (Fla. 1st DCA 2005).

[47] *Id.* at 365.

[48] *Hartzog,* 917 So. 2d at 364-65 (citations omitted).  *See also, Bunting v. Daly's Inc.*, 528 So.2d 106 (Fla. 4th DCA 1988) (person who did not hold record title, but who had paid for a pickup truck and used it could sue a towing company for conversion after the defendant refused to release the truck to anyone other than holder of record title).

[49] 872 So.2d 1017 (Fla. 2d DCA 2004).

who had neglected to apply for title.[50]  Polanco argued that he was still the owner of the car

because Hoffman never registered his title.  The court rejected that argument and held that, while

Hoffman never obtained marketable title, ownership of the vehicle passed to him when he

tendered payment and received the executed certificate of title.[51]

Defendants rely on two bankruptcy court decisions, neither of which governs the decision

in this case.  The first is *In re Coburn*,[52] where the bankruptcy court ruled that a truck, titled in

the debtor's name on the petition date, became property of the bankruptcy estate, free of the

alleged interest of the debtor's father who, for years, had possession of the title certificate that

had been issued to his son.[53]  In so ruling, the court offered the following commentary on Fla.

Stat. § 319.22:

> "Moreover, '[e]xcept as otherwise provided herein, no court shall
> recognize the right, title, claim, or interest of any person in or to any
> motor vehicle or mobile home sold, disposed of, mortgaged, or
> encumbered, unless evidenced by a certificate of title duly issued to
> that person, in accordance with the provisions of this chapter.'  Fla. Stat.
> § 319.22.  This language leaves little room for interpretation."[54]

But, *Coburn* did not involve the issue presented here – whether a bankruptcy court is

barred, by Fla. Stat. § 319.22(1), from determining that a person not holding registered title to a

motor vehicle on the petition date is, nevertheless, the beneficial owner.  In *Coburn*, there was no

question of ownership by the debtor, who not only held the title of record, but had exclusive use

---

[50] *In re Forfeiture of Cadillac Escalade,* 872 So.2d at 1019.

[51] *Id.*

[52] 250 B.R. 401 (Bankr. M.D. Fla. 1999).

[53] *Id.* at 404.

[54] *Id.*

of the truck.  The issue was whether the "strong arm" provision of Bankruptcy Code § 544(c) gave the bankruptcy estate a superior interest over the father's unrecorded interest.[55]

Defendants also rely on *In re Orange Rose, LLC*, where the bankruptcy court observed that "as a general proposition Section 319.22 is to be strictly enforced."[56]  In that case, the debtor had acquired 37 mobile homes, pursuant to a settlement agreement made before the transferee filed its bankruptcy petition.  The debtor had failed to pay for the mobile homes or obtain title certificates with the transferor named as lienholder, as the settlement agreement required.[57]  On the petition date, the 37 titles were still in the name of the transferor; if the debtor were to be treated as the owner of the mobile homes, it would hold them free and clear of the seller's unrecorded liens, a result that would allow the debtor to benefit from its failure to perform under the settlement agreement.[58]  The court observed:  ". . . because the [d]ebtor, as a purchaser, failed to comply with the requirements of Section 319.22, this court must strictly enforce its mandate and find that ownership remains with the seller. . . ."[59]

Like *Coburn*, the court in *Orange Rose* was not required to decide the issue of whether a debtor's delay in complying with the registration requirement of Fla. Stat. §319.22(1) bars this court from determining that he held beneficial ownership on the petition date.  It is apparent that the court in *Orange Rose* viewed the pre-petition sale as being incomplete and that it would be

---

[55]  *In re Coburn,* 250 B.R. at 403.

[56]  446 B.R. 543, 549 (Bankr. M.D. Fla. 2011).

[57]  *Id.* at 544-45.

[58]  *Id*. at 549-50.

[59]  *Id.* at 544.

inequitable to allow the debtor to benefit from its failure to comply with the settlement agreement.[60]

The applicable statute and case law establish that a person can be the owner of a motor vehicle even in the absence of being named on a registered title certificate.  For that reason, defendants' motion for summary judgment must be denied.

<u>The Trustee's Motion for Summary Judgment</u>

Based on the record, the Court makes these findings of fact:

(1)     Debtor inspected the Motorcycle and made the decision to buy it.[61]

(2)     Debtor delivered the entire consideration, in cash, to the seller on June 26, 2011, and took possession of the Motorcycle and the 2010 Title Certificate with seller's endorsement.

(3)     Although the seller, Melanson, was still the registered holder of title on the Petition Date, he has made no claim that the sale was not completed before the Petition Date, or that the sale should be rescinded.[62]

(4)     Debtor transported the Motorcycle to his residence, where he kept it for some time and did repairs on it.

(5)     In March 2012, Debtor submitted to the Florida DMV an application for title to the Motorcycle stating "under penalties of perjury" that Debtor is the "owner" of the Motorcycle that was acquired on "06/26/2011."  Likewise, the endorsed 2010 Title Certificate submitted with the title application states that Debtor was the "purchaser" in the sale transaction on "6-26-2011."

(6)     Hammons did not deal with the seller and his name does not appear on any of the documents in the Florida DMV title report.

Defendants maintain that Debtor acquired the Motorcycle for Hammons.  But, even when the record is viewed most favorably to defendants, there is nothing to establish that Hammons

---

[60] *In re Orange Rose, LLC,* 446 B.R. at 549-50.

[61] Doc. No. 80 at ¶¶ 23, 27.

[62] According to Debtor, Melanson met with him nine months after the sale to sign the required odometer discharge statement to facilitate the issuance of title to Debtor.  Doc. No. 80 at ¶ 38.

ever owned it.  Hammons did not deal with the seller; Hammons' name was not inserted as the "buyer" on the endorsed 2010 Title Certificate.  Hammons does not appear as the "buyer" or "owner" on any document in the Florida DMV title report.  At most, Debtor and his father had an understanding that Hammons would eventually take title to the Motorcycle, conditioned on Hammons trying it out.  But, Hammons found the Motorcycle to be unsuitable.

The power of attorney form proffered by defendants does not establish Hammons' ownership.  It is incomplete – neither signed by Hammons (only his printed name appears on the signature line), nor notarized.[63]  Second, the power supposed to be granted was to act for Hammons in applying for title.  But, Debtor elected not to have Hammons' name inserted as the buyer on the endorsed 2010 Title Certificate.  Debtor never applied for title in Hammons' name.

It is irrelevant, even if accepted as true, that Debtor's name was not written on the 2010 Title Certificate until after the petition date.  Debtor had the power to insert his name, or anyone else's, whenever it suited his purpose.  Possession of that document gave Debtor control over the marketable title.[64]

When Debtor applied for title in March 2012, he did so by attesting that he was the owner of the Motorcycle and that it was purchased on June 26, 2011.  Debtor's title application, together with the 2010 Title Certificate, constitute admissions by Debtor that he was the purchaser and owner of the Motorcycle as a result of the pre-petition transaction.

The Court concludes that Debtor may not receive the benefit of marketable title to the Motorcycle, arising from the pre-petition transaction, while taking the inconsistent position that he did not own the Motorcycle until March 28, 2012, when the Florida DMV issued a title

---

[63] Doc. No. 80 at 12.  On the date stated in this form, June 23, 2011, Melanson was still the owner of the Motorcycle and, according to defendants, Debtor had not yet inspected the Motorcycle or decided to buy it.

[64] The 2010 Title Certificate would itself be property of the estate on the petition date.

certificate to him.  It is appropriate, here, to invoke the equitable doctrine of judicial estoppel.[65]

Debtor is now estopped from taking the contrary position in this proceeding that he did not own

the Motorcycle on the Petition Date.[66]

The Court concludes that Debtor was the beneficial owner of the Motorcycle from June

26, 2011.  His equitable interest became property of the estate on the Petition Date.  Even though

the seller, Melanson, was the record title holder on the Petition Date, he had already relinquished

his interest to Debtor.  Hammons' name was not inserted as "buyer" on the 2010 Title Certificate

and Hammons never had any of the attributes of ownership.  The Florida DMV title report shows

that as of May 14, 2014, Debtor had not transferred title to the Motorcycle to anyone else.[67]

Thus, Debtor still owned the Motorcycle when the case was converted to Chapter 7.

Accordingly, the Trustee's motion for summary judgment on both counts will be granted.

---

[65]  The doctrine of judicial estoppel may be applied when a position is taken in an administrative application and an inconsistent position is taken later in a judicial proceeding.  *Talavera v. School Bd. of Palm Beach County,* 129 F.3d 1214 (11th Cir. 1997).

[66]  Courts may apply judicial estoppel "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  The Supreme Court explained that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle."[66]  The Supreme Court went on to list several factors that inform a court's decision to apply judicial estoppel:  (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party succeeded on its previous position; and (3) whether the party asserting an inconsistent position would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  This list is not all-inclusive, however.  The Supreme Court instructed that "[i]n enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.  Additional considerations may inform the doctrine's application in specific factual contexts."  *Id.  See also, Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002) (citing *American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir. 1983).

[67] Doc. No. 70 ¶¶ 8-13.

4.      Related Matters.

After the parties' motions for summary judgment had been taken under advisement, Debtor filed a motion for "involuntary dismissal" of this proceeding.[68]  In his motion, Debtor proclaims that the Trustee is implicitly challenging the constitutionality of Fla. Stat. § 319.22(1).[69]  Debtor contends that any ruling by this Court that he owned the Motorcycle on the Petition Date is a "refutation" of Fla. Stat. § 319.22, which he characterizes as a constitutional challenge.  Debtor further contends that Trustee has failed to comply with Fed. R. Civ. P. 5.1, which requires a party challenging the constitutionality of a state statute to serve notice and papers on the State's Attorney General.  He argues that this Court has failed to comply with the rule because it has not certified the constitutional challenge to the Florida Attorney General, as required by 28 U.S.C. § 2403.  Therefore, Debtor maintains, this proceeding must be dismissed.[70]

But, the Trustee has not asked the Court to invalidate Fla. Stat. § 319.22(1).  No pleading has been filed in this proceeding asking for such a ruling.  There is no judgment or order that this Court will enter that will invalidate Fla. Stat. § 319.22(1).

---

[68]  Doc. No. 103.  The motion is captioned:  *"Motion for Involuntary Dismissal and Notice to the Court, to the Court Record, and All Parties, of Defendants Notice to Florida State Attorney General Pam Bondi, of the Court and All Parties, Including Witnesses Evasive Actions of Concealment of a Constitutional Challenge and The Supreme Courts Doctrine Identifying the Challenge Under FRCP 5.1(a)(b), the Courts Evasive Concealment of Requirement FRCP 5.1(b), 28 U.S.C. § 2403(b), the Courts Failure to Recognize Lack of Jurisdiction Under FRCP 5.1(c) to Enter a Final Order Refuting, F.S. 319.22(1) or to Reject the Constitutional Challenge Without Notice to the State Attorney Generals Office, the Courts Intent to Enter a Final Judgment in an Adversary Proceeding Regarding F.S. 319.22(1) and the Constitutional Challenges by the Plaintiff's and Attorney's, the Plaintiff's and Plaintiff's Attorney's Failure to Follow FRCP 4(m), Failure to Follow FRCP 19(a)(1)(A), FRCP (a)(1)(B)(i)."*

[69]  According to Debtor:  "The only way to attempt to make a claim when every **court in the State of Florida** is **barred** by **F.S. 319.22(1),** would be to **challenge** the **constitutionality** of the **statute** or the validness, which is the constitutionality challenge, if in the end result the plaintiff is claiming to refute F.S. 319.22(1) completely."  Doc. No. 103 at ¶ 18 (emphasis in original).

[70]  Doc. No. 103 at 17.

This adversary proceeding concerns only the issue of whether Debtor was the beneficial owner of the Motorcycle on the Petition Date, an issue which falls within the exception for transfers by operation of law set forth in Fla. Stat. § 319.22(1).  Debtor's claim of a constitutional challenge lacks merit and will be denied.

Second, the Trustee has requested that the Court strike certain allegations in defendants' motion for summary judgment.[71]  These include, for example, that "Susan Woodard and her attorney Herbert Donica attempted to defraud Debtor Thomas Chesley in this case by trying to collect towing fees and attorney's fees to represent the matter of the false towing fees with this court."[72]  "Mr. Donica completely lied to Judge Rodney May face to face."[73]  And, "We revisit the undisputed fact that the Chapter 7 Trustee has committed fraud against Thomas Chesley in this case."[74]  The Court is empowered, in its discretion, to "strike from a pleading any redundant, immaterial, impertinent, or scandalous matter."[75]  The Court finds such allegations to be unfounded and irrelevant to the issues in this proceeding.  The Court will strike them.

Third, on October 20, 2015, Debtor filed "Debtors [sic] Consolidated Motion for Summary Judgment for Timothy R. Nobles, Tim Nobles Trailers [sic] Sales and Rentals, Inc., Tim Nobles Trailers Inc., Tim Nobles Trailers and Repair LLC, Motion for Reconsideration and

---

[71]  Such allegations appear in 6 of the 52 paragraphs contained in the motion.  Doc. No. 80 at ¶¶ 9, 20-22, 48-49.  These allegations apparently stem from a motion filed by the Trustee on January 30, 2014, to compel debtor to turn over assets, with a request that the Court equitably surcharge the Debtor's $1,000 vehicle exemption to cover costs incurred by the Trustee for Debtor's lack of cooperation regarding the turnover of a F-450 Ford truck.  The Debtor disputed the alleged lack of cooperation and objected.  Main Case, Doc. No. 566.  The matter was heard in open court; the Court declined to grant the relief requested by the Trustee.  Main Case, Doc. No. 615.

[72]  Doc. No. 80 at ¶ 21.

[73]  *Id.*

[74]  *Id.* at ¶ 48.

[75]  Fed. R. Civ. P. 12(f).

Moves for Judicial Estoppel,"[76] which was later amended on October 30, 2015.[77] To the extent Debtor's amended motion for summary judgment relates to this adversary proceeding, the Court finds that the amended motion raises no new arguments. Furthermore, the amended motion for summary judgment was filed over six months after the Court held hearings on the cross motions for summary judgment in this proceeding. As such, the Court deems it appropriate to deny Debtor's amended motion for summary judgment.

CONCLUSION

Debtor's motion for summary judgment will be denied, because it is premised on the erroneous legal proposition that Fla. Stat. § 319.22(1) bars this Court from determining that Debtor was the beneficial owner of the Motorcycle on the Petition Date. The very statute he relies on allows for transfers by operation of law, including orders in bankruptcy. Controlling Eleventh Circuit precedent and Florida appellate decisions instruct this Court that the state of the registered title for a vehicle is but one factor in determining actual ownership.

The undisputed facts leave no doubt that Debtor was the beneficial owner of the Motorcycle on the Petition Date and that his equitable interest became property of the bankruptcy estate. The Trustee is entitled to summary judgment on both Counts I and II of the Complaint. The Court will enter a final judgment in favor of the Trustee.

Clerk's Office to Serve.

---

[76] Doc. No. 109.

[77] Doc. No. 110.